## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

LESLIE MICHALLE CLARK                                          PLAINTIFF

v.                          NO.  4:09cv00451 JLH-JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                       DEFENDANT

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

 This recommended disposition has been sent to Chief United States District Judge J. Leon Holmes.  Within fourteen (14) days after being served with a copy of the recommended disposition, any party may serve and file with the Clerk of this Court specific written objections to the proposed findings and recommendations.  A copy of the objections must be served on the opposing party, who may respond within fourteen (14) days after being served.  The District Judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the Magistrate Judge with instructions.  See Fed. R. Civ. P. 72(b); Local Rule  72.1(VIII)(C), Rules of the United States District Court for the Eastern District of Arkansas.

### RECOMMENDED DISPOSITION

 Plaintiff, Leslie Michalle Clark, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Disability Insurance benefits and Supplemental Security Income, based on disability.  Both parties have submitted appeal briefs and the case is ready for decision.

 The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error.  Slusser v. Astrue, 557 F.3d 923, 925 (8th Cir. 2009); Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision.  Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382a(3)(A).  A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

Plaintiff alleged that she was limited in her ability to work by depression, auditory hallucinations, a hearing loss, suicidal ideation and a learning disability.  (Tr. 113.)  The Commissioner found that she was not disabled within the meaning of the Social Security Act.  The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through July 24, 2008, the date of his decision.  (Tr. 67.)  On April 24, 2009, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3.)  Plaintiff then filed her complaint initiating this appeal (doc. 2).

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is not supported by substantial evidence and that the case should be remanded.

Plaintiff was 35 years old at the time of the hearing.  (Tr. 19, 22.)  She completed the ninth or tenth grade in school.[1]  (Tr. 23.)  She has no past relevant work.  (Tr. 65.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process.  20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4) (2007).

The ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 59.)  He found Plaintiff had "severe" impairments, a hearing loss, learning disorder and mood disorder.  Id.  He determined that she did not have an impairment or combination of impairments that met or equaled a Listing.  (Tr. 60.)  He found her statements concerning the intensity, persistence and limiting effects of her symptoms less than fully credible.  (Tr. 62, 65.)

The ALJ determined that Plaintiff retained the residual functional capacity to perform work at all exertional levels[2] with certain nonexertional limitations.  (Tr. 62.)  He found she had no past relevant work.  (Tr. 65.)  Based on the testimony of a vocational expert witness in response to a hypothetical question and his answers to written interrogatories, the ALJ found that there were a significant number of jobs in the economy which Plaintiff could perform, notwithstanding her limitations, for example, poultry deboner or eviscerator, hand packager (any industry) or hotel/motel maid.  (Tr. 66.)  Thus, the ALJ concluded that Plaintiff was not disabled.  (Tr. 67.)

---

[1]Plaintiff's testimony on the subject was a little vague.  (Tr. 23.)  On one form, she indicated that she completed the tenth grade with some classes in special education.  (Tr. 117.)

[2]At one point in the opinion, the ALJ seems to limit Plaintiff to unskilled medium work.  (Tr. 66.)
Medium work.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work.
20 C.F.R. §§ 404.1567(c); 416.967(c) (2007).

Plaintiff raises only one argument in her appeal brief, that the ALJ erred in not finding that she met Listing 12.05C. That Listing, in pertinent part, reads as follows:

12.05 *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007).

The ALJ specifically discussed Listing 12.05:

The claimant's medical records were not attended with the specific clinical signs and diagnostic findings pertaining to the claimant's learning disorder required to meet or equal the requirements set forth in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix I, Listing 12.05. The medical evidence of record does not document a significantly sub-average general intellectual functioning manifested prior to age 22 evidenced by dependence on others for personal needs, a valid verbal, performance, or full scale IQ of 59 or less, or a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

(Tr. 60.) The final sentence of this quote from the ALJ's opinion does not make clear what element(s) of the Listing the ALJ found lacking.

On August 30, 2007, Plaintiff was administered the Wechsler Adult Intelligence Scale-3d edition. (Tr. 267-73.) She scored a verbal IQ of 72, performance IQ of 74 and full-scale IQ of 70. (Tr. 273.) Plaintiff contends the 70 IQ satisfied the first prong of 12.05C. (Pl.'s. Br. 3-4.) It may or may not. In an early case, the Eighth Circuit found the first prong of 12.05C was satisfied by the IQ score alone: "The ALJ should have considered whether Smith's physical or other mental impairments posed such an additional limitation, which would have led to an automatic finding of disability." Smith v. Heckler, 735 F.2d 312,

318 (8th Cir. 1984).

More recent cases have come to a different result.  In <u>Mackey v. Shalala</u>, 47 F.3d 951 (8th Cir. 1995), the evidence before the ALJ contained a psychiatrist's estimate of claimant's IQ at 70 to 74.  A subsequent WAIS-R test showed a Full Scale IQ of 65.  The Court rejected that latter evidence, noting that nothing in plaintiff's work history, educational background or anything else in the medical evidence supported an IQ so low as to reflect mild mental retardation.  <u>Id.</u> 953.

An IQ test is useful in determining whether an applicant has a mental impairment, but other information in the record which indicates the individual's ability to function can be used to discredit the lone IQ score.  <u>Johnson v. Barnhart</u>, 390 F.3d 1067, 1070 (8th Cir. 2004); <u>Holland v. Apfel</u>, 153 F.3d 620, 621-22 (8th Cir. 1998).

The Commissioner is not required to accept a claimant's IQ scores, and may reject scores that are inconsistent with the record.  <u>Scott ex rel. Scott v. Astrue</u>, 529 F.3d 818, 824 (8th Cir. 2008); <u>Johnson v. Barnhart</u>, 390 F.3d at 1071; <u>Miles v. Astrue</u> 374 F.3d 694, 699 (8th Cir. 2004); <u>Clark v. Apfel</u>, 141 F.3d 1253, 1255 (8th Cir. 1998).  Indeed, test results of this sort should be examined to assess consistency with daily activities and behavior.  <u>Id.</u>

The latest edition of <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th ed., Text Revision 2000), points out the danger of relying on IQ scores alone:

> Significantly subaverage intellectual functioning is defined as an IQ of <u>about</u> 70 or below (approximately 2 standard deviations below the mean).  <u>It should be noted that there is a measurement error of approximately 5 points in assessing IQ</u>, although this may vary from instrument to instrument (e.g., a Wechsler IQ of 70 is considered to represent a range of 65-75).  Thus, it is possible to diagnose Mental Retardation in individuals with IQ between 70 and 75 who exhibit significant deficits in adaptive behavior.  Conversely, Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning.  The choice of testing instruments and interpretation or results should take into account factors that may limit test performance (e.g., the individual's sociocultural background, native language, and associated communicative, motor, and sensory handicaps.)  When there is significant

scatter in the subtest scores, the profile of strengths and weaknesses, rather than the mathematically derived full-scale IQ, will more accurately reflect the person's learning abilities.  When there is a marked discrepancy across verbal and performance scores, averaging to obtain a full-scale IQ can be misleading.

at 41-42 (emphasis added).

These significant changes are reflected in the regulations.  For instance, the regulation in effect when Smith v. Heckler was decided stated, "The degree of impairment should be determined primarily on the basis of intelligence level and the medical report." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00B4 (1982).

By way of contrast, the current regulation de-emphasizes pure IQ test scores and looks at the bigger picture:

> *Documentation.*  The evaluation of disability on the basis of a mental disorder requires sufficient evidence to (1) establish the presence of a medically determinable mental impairment(s), (2) assess the degree of functional limitation the impairment(s) imposes, and (3) project the probable duration of the impairment(s).  See §§ 404.1512 and 416.912 for a discussion of what we mean by "evidence" and how we will assist you in developing your claim.  Medical evidence must be sufficiently complete and detailed as to symptoms, signs, and laboratory findings to permit an independent determination. In addition, we will consider information you provide from other sources when we determine how the established impairment(s) affects your ability to function.  We will consider all relevant evidence in your case record.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00D (2007).  In the 26 years since Smith v. Heckler was decided, the regulations have moved away from an automatic decision based on IQ scores alone.

The ALJ's lack of discussion of his reasoning for rejecting Plaintiff's contention[3] that she met 12.05C leaves the Court no other choice than to speculate, which the Court cannot do.

Defendant argues that despite a Step 2 finding that Plaintiff's hearing loss and mood

---

[3]Plaintiff clearly raised the issue, at the hearing itself (Tr. 28)  and by letter afterwards (Tr. 173).

disorder were "severe" impairments, she did not have "a physical or other mental impairment imposing additional and significant work-related limitation of function." (Def.'s Br. 8-11.)  He points to <u>Bryant on behalf of Bryant</u>, 141 F.3d 1249, 1252 (8th Cir. 1998).  In that case, the ALJ clarified that headaches initially found to be "severe" at Step 2 posed no more than a slight limitation of function and thus did not satisfy the second prong of 12.05C.  The instant case is distinguishable from <u>Bryant</u>.  In the case at bar, the ALJ specifically held:

> The undersigned finds that the claimant's hearing loss has more than a minimal effect on the claimant's ability to do basic work activities because it limits her ability to understand speech, and the condition is therefore severe consistent with SSR 85-28.

> The undersigned finds that the claimant's mood disorder has more than a minimal effect on the claimant's mental ability to do basic work activities and is therefore severe consistent with SSR 85-28.

> The undersigned finds that the claimant's learning disorder has more than a minimal effect on the claimant's mental ability to do basic work activities and is therefore severe consistent with SSR 85-28.

(Tr. 59-60.)

A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities.  <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997); <u>Browning v. Sullivan</u>, 958 F.2d 817, 821 (8th Cir. 1992); 20 C.F.R. §§ 404.1520(c), 416.920(c) (2007).  It has "more than a minimal effect on the claimant's ability to work." <u>Hudson v. Bowen</u>, 870 F.2d 1392, 1396 (8th Cir. 1989); <u>accord</u>, <u>Kirby v. Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007); <u>Page v. Astrue</u>, 484 F.3d 1040, 1043 (8th Cir. 2007).  Having held, at Step 2, that her enumerated impairments had more than a minimal effect on her ability to work, the ALJ cannot then determine at Step 3 that they did not.

This case should be remanded for a reasoned evaluation of whether Plaintiff met Listing 12.05C.  Therefore, the Magistrate Judge recommends that this case be reversed

and remanded for action consistent with this opinion.  This would be a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and <u>Melkonyan v. Sullivan</u>, 501 U.S. 89 (1991).

DATED this 27th day of April, 2010.


_____
UNITED STATES MAGISTRATE JUDGE